UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT SAWYER,<br>      Plaintiff,<br><br>v.<br><br>SPRINGFIELD TERMINAL RAILWAY<br>COMPANY and<br>BOSTON & MAINE CORPORATION,<br>      Defendant. | C.A. No. 04-11945-JLT |

**DEFENDANT, SPRINGFIELD TERMINAL RAILWAY COMPANY'S,
MOTION FOR SUMMARY JUDGMENT**

**1.    INTRODUCTION**

NOW COMES the defendant, Springfield Terminal Railway Company, and respectfully requests that this Honorable Court enter summary judgment in its favor, pursuant to Fed. R. Civ. P. 56(b), and dismiss all claims brought by the plaintiff, Robert Sawyer, against the defendant, pursuant to the Federal Employers' Liability Act, 45 U.S.C.S. §§ 51 et seq., and the Locomotive Boiler Act, 49 U.S.C.S. §§ 20701 et seq.,[1]. In support of this Motion, the defendant states that there are no material issues of fact in dispute and that it is entitled to the entry of judgment in its favor as a matter of law.

---

[1]    The plaintiff originally brought suit against the Boston & Maine Corporation, as well as the Springfield Terminal Railway Company and asserted claims against both defendants pursuant to the Federal Safety Appliance Act, 49 U.S.C.S. §§ 1 et seq. Subsequently, the plaintiff filed a Stipulation of Dismissal of all claims against the Boston & Maine Corporation which was entered by the Court on October 12, 2004 and a Stipulation of Dismissal of the Federal Safety Appliance Act claims against the Springfield Terminal Railway Company which was entered by the Court on November 22, 2004.

2.  **STATEMENT OF THE CASE**

For purposes of this Motion only, the defendant, Springfield Terminal Railway Company, submits that the following facts are not in dispute:

1. On October 23, 2003, the plaintiff, Robert Sawyer, was employed as a conductor/trainman by the defendant, Springfield Terminal Railway Company ("STR"). Plaintiff's Complaint attached hereto as "Exhibit A."

2. On October 23, 2003, the plaintiff was working with engineer, Gary Willis, on Engine MEC 515, performing switching operations in STR's Somerville Rail Yard. Deposition testimony of Robert Sawyer, attached hereto as "Exhibit B," pp. 10-13, 27 and 31.

3. When he began his job duties on Engine MEC 515 on October 23, 2003, the plaintiff entered the engine through the door located in the nose of the engine without incident. Exhibit B, pp.26-27.

4. While performing his job duties on October 23, 2003, the plaintiff entered and exited through the door located in the nose of the engine on numerous occasions without incident. Exhibit B, pp. 28-29.

5. At approximately 1:15 p.m. while exiting the engine through the door located in the nose of the engine, the plaintiff caught the tip of his right ring finger presumably between the door and the door jamb. Exhibit B, pp. 31-33

6. The plaintiff has no recollection of how the injury to his finger occurred other than the fact that the door closed on his finger. Exhibit B, p. 58. Moreover, the plaintiff does not know what caused the door to close nor does he recollect whether he, in

fact, was in the process of closing the door when the subject incident occurred. Affidavit of Warren Bostwick, attached hereto as "Exhibit C" with attached transcript from a hearing conducted on November 19, 2003 containing the testimony of the plaintiff, Robert Sawyer, Hearing Transcript pp. 32-33.

7. There were no other witnesses to the subject incident. Exhibit B, pp. 134-135.

8. The engine door at issue in this litigation was equipped, at the time of the subject incident, with an operable, latching device as required under 49 CFR 229.119, and weighed in excess of one hundred and twenty-five (125) pounds. Affidavit of Michael J. Walsh, attached hereto as "Exhibit D."

9. At the time of the subject accident, all STR employees were required to follow certain safety rules in the performance of their job duties. Affidavit of Paul D'Hondt, attached hereto as "Exhibit E."

10. All conductors, including the plaintiff, are provided with a copy of STR's Employee Safety Rules Manual and are bound to comply with all rules contained therein and to have a copy of the Manual available for reference while they are on duty. Exhibit E.

11. STR's Safety Rule 79 provided that: "Care must be exercised in opening and closing locomotive and car doors to avoid injury to fingers being caught against door facings and latches. Handles provided for that purpose must be used. Do not place fingers or hands on door or door jamb for any reason!" Exhibit E.

12. On October 23, 2003 less than two hours after the subject incident occurred, a mechanical inspection of Engine MEC 515 was performed by STR's General

Manager of Locomotives, Michael J. Walsh, and STR's Engine Maintainer, Paul D'Hondt. Exhibit D; Exhibit E. Based upon their inspection, Mr. Walsh and Mr. D'Hondt determined that there was nothing mechanically wrong with the engine door and that the door's handle and appurtenances were without defect. Exhibit D; Exhibit E.

13. On November 19, 2003, the plaintiff provided testimony concerning the subject incident at an STR disciplinary hearing. Exhibit C. During the course of the hearing, the plaintiff was asked how he sustained his injury. In response to this inquiry, the plaintiff stated that all he could remember was the door closing on his hand and that he did not know what caused the door to close or whether he was in the process of closing the door when his injury occurred. Exhibit C, Hearing Transcript, pp. 32-33.

14. At deposition, the plaintiff testified that he had reviewed the transcript of the November 19, 2003 hearing in preparation for his deposition and that his testimony at the November 19, 2003 hearing was complete, truthful and accurate. Exhibit B, pp. 78-79.

15. At deposition, the plaintiff also admitted that: (1) he should not have used the engine door if he determined that it was unsafe; (2) there were two other doors he could have utilized while performing his job duties; and (3) prior to the incident, he never reported that the engine door was closing too quickly to anyone, including his supervisors. Exhibit B, pp. 43, 113-116 and 119-120.

16. In his Answer to defendant's Interrogatory No. 2 which requested a description in

4

complete detail as to how the subject incident occurred, the plaintiff stated that he "felt pain in right hand, pulled hand away ..." No further description was given as to how the alleged incident occurred. In Answers to defendant's Interrogatory Nos. 23 and 24, the plaintiff relied on the testimony given at the November 23, 2003 disciplinary hearing "regarding the cause of plaintiff's injury." Plaintiff's Answer to Defendant's First Set of Interrogatories, attached hereto as "Exhibit F."

17. In support of his liability allegations against STR, the plaintiff has produced a report prepared by Lewis N. Catone. Report of Lewis N. Catone, attached hereto as "Exhibit G."

## 2. LEGAL ARGUMENT

The plaintiff has brought suit against STR, pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C.S. §§ 51 et seq., and the Locomotive Boiler Act ("LBA"), 49 U.S.C.S. §§ 20701 et seq., alleging that the engine door he was exiting at the time of the subject incident "malfunctioned, was defective and was improperly and/or poorly maintained." Exhibit A. STR denies the plaintiff's allegations concerning the condition of the engine door and maintains that, throughout the relevant period, the engine door was in a safe condition, free from hazards, and in compliance with all applicable safety regulations.

### IN A FELA ACTION ALLEGING INJURY CAUSED BY A DEFECTIVE CONDITION, THE PLAINTIFF HAS THE BURDEN OF SHOWING THE EXISTENCE OF THE ALLEGED DEFECTIVE CONDITION AND THAT HIS EMPLOYER HAD ACTUAL OR CONSTRUCTIVE NOTICE OF THE ALLEGED DEFECTIVE CONDITION.

Federal Courts have interpreted FELA as placing a duty on the railroads to provide its employees with a reasonably safe workplace, reasonably safe equipment, proper training and

suitable methods to perform assigned work. Zarecki v. National Railroad Passenger Corp., 914 F.Supp. 1566, 1571 (N.D. Ill. 1996). Although FELA is liberally construed, it does not make the employer an insurer of the safety of its employees. Ellis v. Union Pacific Railroad Co., 329 U.S. 649, 633 (1947). A FELA plaintiff who fails to produce even the slightest evidence of negligence will lose at summary judgment. McGinn v. Burlington Northern Railroad Co., 102 F.3d 295, 301 (7th Cir. 1996). Notably, proof of injury, standing alone, will not sustain the plaintiff's burden of proof in showing the negligence of his employer. Moore v. Chesapeake & Ohoi Railway Co., 340 U.S. 573, 577-578 (1951). Instead, the plaintiff must present some evidence of negligence to withstand summary judgment. Deutsch v. Burlington Northern Railroad Co., 983 F.2d 741, 744 (7th Cir. 1992). Specifically, the plaintiff must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability and causation. Fulk v. Illinois Central Railroad Co., 22 F.3d 120, 124 (7th Cir. 1994). Where a FELA plaintiff's claim is based upon a defective condition, the plaintiff cannot recover without showing that the employer had actual or constructive notice of the condition. Williams v. National Railroad Passenger Corp., 161 F.3d 1059, 1063 (7th Cir. 1998).

In this action, the plaintiff alleges that he suffered a laceration of his right ring finger on October 23, 2003 when he was exiting the engine he was assigned to through a door which led to a catwalk located at the front of the engine. Exhibit A. No other person witnessed the alleged incident. Exhibit B, pp. 134-135. Following the incident, the plaintiff appeared at a disciplinary hearing arising from the subject incident and testified that he did not know how his injury occurred, what caused the engine door to close or whether he was in the process of closing the door when his injury occurred. Exhibit C, Hearing Transcript, pp. 32-33. At deposition, the

plaintiff testified that he reviewed the transcript of the disciplinary hearing in preparation for his deposition and that his testimony at the hearing was complete, truthful and accurate. Exhibit B, pp. 78-79. In Answers to Interrogatories, the plaintiff also failed to describe in any manner how his alleged injury occurred.

In the case of Williams v. National Railroad Passenger Corporation, 161 F.3d 1059 (7th Cir. 1998), the plaintiff alleged that he was injured while assisting passengers with their carry-on baggage when the door of a coach car closed striking him in the head. The Williams Court affirmed the entry of summary judgment in favor of the railroad on the basis that the plaintiff presented insufficient evidence that the railroad breached it duty to maintain a reasonably safe workplace. Id. at 1062. In support of its decision, the Court relied upon the fact that the plaintiff could not explain why the door closed or how the door's closing could be traced to the negligence of the railroad. Id. at 1063. Likewise, in the instant case, the plaintiff cannot explain why the door closed or even how his alleged injury occurred. To the extent that the plaintiff is asking the Court to infer negligence from the fact that he sustained an injury, the plaintiff has failed to carry his burden of proof entitling STR to a judgment in its favor, as a matter of law. Moore v. Chesapeake & Ohoi Railway Co., 340 U.S. 573, 577-578 (1951).

There is no evidence that any prior inspection of the engine door revealed any defective condition or that STR was on notice of any defective condition involving the engine door. On the day of the subject incident, the plaintiff entered and exited through the engine door numerous times without injuring himself and never reported that the engine door was closing too quickly to anyone, including his supervisors. Exhibit B, pp. 43, 113-116 and 119-120. The plaintiff concedes that he should not have used the engine door if he determined that it was unsafe and that

7

there were two other doors he could have utilized while performing his job duties. Exhibit B, pp. 43, 113-116 and 119-120. Notwithstanding, the plaintiff continued to utilize the engine door up until the time the subject incident occurred. Moreover, there is no evidence that anyone, including, but not limited to, STR, was on notice of any defective condition with the engine door and STR denies that any such defective condition even existed. Absent evidence of any defective condition with the engine door which caused the plaintiff's injury or any actual or constructive notice of any such alleged defective condition, the plaintiff cannot show any evidence of negligence on the part of STR and his FELA claim therefore fails, as a matter of law.

### THE PLAINTIFF'S ALLEGATION THAT HIS INJURY WAS CAUSED BY A DEFECTIVE CONDITION WITH THE ENGINE DOOR IS BASED UPON SPECULATION AND CONJECTURE ENTITLING THE DEFENDANT TO A JUDGMENT IN ITS FAVOR, AS A MATTER OF LAW.

Based upon the plaintiff's lack of knowledge concerning how the subject incident occurred, the allegation that his injury was caused by the unsafe and defective condition of the engine door is based simply upon speculation and conjecture. The plaintiff has failed to present any evidence as to how the door closed on his finger and has testified that he is not even sure as to whether he himself closed the door on his finger. Exhibit C, Hearing Transcript, pp. 32-33.

"The nonmoving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). When a FELA plaintiff's claims are based upon speculation and conjecture, the entry of summary judgment in favor of the defendant is proper. Deans v. CSX Transportation, 152 F.3d 326, 330 (4th Cir. 1998).

In support of his FELA claim against STR, the plaintiff relies upon a report prepared by a

railroad transportation consultant, Lewis N. Catone. Exhibit G. In his report, Mr. Catone speculates that the engine door involved in the subject incident was blown shut by the wind. Exhibit G. In support of his theory as to how the engine door closed, Mr. Catone relies upon meteorological reports for Boston, Massachusetts, notwithstanding the fact that the subject incident occurred in Somerville, Massachusetts. Exhibit G. Mr. Catone further relies upon the maximum wind speeds and gust speeds which were calculated for the twenty-four hour period on October 23, 2003, and not for the specific time period when the subject incident occurred. Exhibit G. Moreover; Mr. Catone's reliance upon wind as a factor in the occurrence of the subject incident is contradicted by the observations of Michael Walsh who inspected the engine within two hours after the subject incident occurred. Exhibit D. Mr. Walsh observed that there was no wind at the time of his inspection which undercuts the theory posited by Mr. Catone and Mr. Catone's reliance upon the meteorological conditions for Boston, Massachusetts. Exhibit D.

Moreover, Mr. Catone's theory that the wind blew the engine door shut is not based upon any objective testing of the engine door. The door at issue weighs in excess of one hundred and twenty-five pounds; thus, common sense dictates that the amount of wind required to close such a door would have to be extreme. Exhibit D. Absent evidence of any testing performed to determine the wind speed that could, by itself, close the engine door, or evidence of extreme wind conditions in the Somerville area at or about the time of the subject incident, Mr. Catone's theory that the wind blew the engine door shut is based upon speculation and conjecture and accordingly should be disregarded.

The more plausible explanation for the subject incident is that the plaintiff closed the door upon his own finger. The door at issue opened to the plaintiff's left and anyone exiting through

9

the doorway to the catwalk of the engine would have his body positioned between the door and the door jamb while exiting. Thus, the subject incident could not have occurred while the plaintiff was exiting the train through the engine door. Plausible explanations for the occurrence of the subject incident would include: (1) that the plaintiff opened the door with his left hand and had his right finger in the door jamb when he stumbled and pulled the door closed before he could exit through the doorway; or (2) that the plaintiff closed the door with his right hand on the door frame and caught his finger between the door and the door jamb. In either instance, there is no evidence of any negligent conduct on the part of STR or evidence that the engine door was defective and that the defect caused the plaintiff's injury. However, based upon the plaintiff's lack of knowledge as to how his injury occurred, any explanation as to the cause of the subject incident would be based upon speculation or conjecture warranting the entry of summary judgment in favor of STR. Deans v. CSX Transportation, 152 F.3d 326, 330 (4th Cir. 1998).

### ADEQUATE WARNINGS WERE PROVIDED TO THE PLAINTIFF REGARDING THE HAZARDS OF HAVING A FINGER OR HAND CAUGHT IN A DOOR FRAME; THUS, THE PLAINTIFF'S FAILURE TO HEED SUCH WARNINGS DOES NOT CONSTITUTE NEGLIGENCE ON THE PART OF THE RAILROAD.

In the instant case, warnings were provided to the plaintiff of the hazards of having a finger or hand caught in a door frame. The fact that the plaintiff failed to heed such warnings should not be deemed to be negligence on the part of STR but rather demonstrates that the plaintiff's own negligence was the proximate cause of the plaintiff's injury.

At the time of the subject accident, all STR employees were required to follow certain safety rules in the performance of their job duties. Exhibit E. All conductors, including the plaintiff, are provided with a copy of STR's Employee Safety Rules Manual and are bound to

comply with all rules contained therein and to have a copy of the Manual available for reference while they are on duty. Exhibit E. STR's Safety Rule 79 provided that: "Care must be exercised in opening and closing locomotive and car doors to avoid injury to fingers being caught against door facings and latches. Handles provided for that purpose must be used. Do not place fingers or hands on door or door jamb for any reason!" Exhibit E. To the extent that the injury occurred when the plaintiff's finger was caught between the engine door and door jamb, the plaintiff's failure to follow Safety Rule 79 caused his injury.

"A railroad breaches its duty under FELA if it knows or should know of a potential workplace hazard, yet fails to exercise reasonable care to inform and protect its employees." Williams v. Long Island Railroad Co., 196 F.3d 402, 406 (2nd Cir. 1999).

In the instant case, STR provided warnings to its employees, including the plaintiff, of the hazard of having fingers caught in doorways and door jambs. Just as parents instruct their little children not to place their fingers between a door and a door jamb, the plaintiff was so instructed by STR. However, there are times when little children do not heed their parents warnings and suffer injury. In such cases are the parents negligent? Should the parents be held liable for their children's failure to follow proper warnings? If one were to accept the assertions made by the plaintiff, all doors, no matter where they are located, should have devices to prevent their closing in order to protect those who fail to heed proper warnings or who fail to exercise the due care expected of the reasonably, prudent person. To find that STR is liable for the plaintiff's alleged injury under circumstances where proper warnings were provided and not heeded with no apparent evidence of negligence on the part of STR would be tantamount to a ruling that STR is an insurer of the safety of its employees while they are performing their workplace duties, a result

that is contrary to the applicable case law interpreting the FELA provisions. Ellis v. Union Pacific Railroad Co., 329 U.S. 649, 633 (1947).

### THE PLAINTIFF'S CLAIMS BROUGHT PURSUANT TO THE LOCOMOTIVE BOILER ACT SHOULD BE DISMISSED, AS A MATTER OF LAW, BECAUSE THE PLAINTIFF CANNOT PROVE THAT HIS INJURY WAS CAUSED BY A FAILURE TO INSTALL EQUIPMENT THAT IS REQUIRED BY FEDERAL REGULATIONS OR WHICH CONSTITUTE AN INTEGRAL OR ESSENTIAL PART OF A COMPLETED LOCOMOTIVE.

In his Complaint, the plaintiff asserts a claim against STR for violation of the Locomotive Boiler Act ("LBA"), 49 U.S.C.S. §§ 20701 et seq. The plaintiff's LBA claim fails however because the engine door at issue complied with all applicable federal regulations and the component parts the plaintiff alleges should have been installed would not constitute integral or essential parts of a completed locomotive.

Pursuant to the LBA, a railroad may be held liable for failing to install equipment only if such equipment: (1) is required by applicable federal regulations; or (2) constitutes an integral or essential part of a completed locomotive. Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir. 1987) (interpreting the former Boiler Inspection Act). Liability however does not attach under the LBA "in every case in which a plaintiff alleges that a carrier's failure to install some piece of equipment on a locomotive rendered the locomotive unsafe." McGinn v. Burlington Northern Railroad Co., 102 F.3d 295, 299 (7th Cir. 1996); citing Mosco v. Baltimore & Ohio R.R., 817 F.2d at 1091.

The plaintiff alleges in this case that the engine door which allegedly caused his injury should have been fitted with a latch to secure the door in the open position, and/or a commercial safety hydraulic door closer. Clearly, such component parts do not constitute integral or essential

12

parts of a completed locomotive such that the failure to install such component parts would expose a railroad to LBA liability. To the extent that a latching device would constitute an integral and essential part of a completed locomotive such a latching device would be for the purpose of keeping the engine door closed, not open.

In McGinn, the plaintiff tripped over his own piece of luggage which was on the floor of the engine he was assigned to and brought a claim against his employer under the Boiler Inspection Act asserting that the carrier should have installed a luggage rack for its employees luggage. The McGinn Court analyzed similar type claims and noted that "the 'essential and integral' argument has failed in other circuits addressing a plaintiff's 'failure to install' claims." McGinn v. Burlington Northern Railroad Co., 102 F.3d at 299 (citations omitted). The McGinn Court further ruled that the luggage rack which the plaintiff alleged should have been installed did "not rise to the level of practicality or necessity as some safety devices" and was simply a "a device of convenience." Id. Similarly, in the instant case, the component parts the plaintiff alleges should have been installed would likewise be "devices of convenience" and not essential, components of a completed locomotive.

Through his expert, Lewis N. Catone, the plaintiff alleges that the engine door did not comply with 49 CFR 229.119(a) which provides, in pertinent part, that : "Cab doors shall be equipped with a secure and operable latching device." Mr. Catone relies upon this regulatory provision as a basis for his opinion that the engine door should have been "equipped with a latch to secure it in the open position, and or a commercial safety hydraulic door closer to prevent any undesired action, such as the one that caused injury to the Plaintiff." Exhibit G. Mr. Catone further states that it is "the custom and common practice" that engine doors are equipped with

such component parts; however, other than bare assertions, he presents no evidentiary support for this statement. Exhibit G. Notably, Mr. Catone's experience in the railroad industry, as set forth in his curriculum vitae, is limited to transportation duties, with no railroad related mechanical experience. Exhibit G.

Michael Walsh, STR's General Manager of Locomotives, has attested that the "secure and operable latching device" required under the provisions of 49 CFR 229.119 is for the purpose of keeping cab doors secured when closed. Exhibit D. The requirements of the regulation do not require a "secure and operable latching device" to keep locomotive cab doors opened. Mr. Walsh is unaware of any other safety regulations, Federal or otherwise, requiring any device to keep locomotive cab doors secured when opened. Exhibit D. Mr. Walsh has further attested that he is unaware of any custom in the railroad industry whereby secure and operable latching devices are employed to keep locomotive cab doors open and that all latching devices in place on cab doors of locomotives operated by STR are for purposes of keeping the cab doors closed. Exhibit D. Moreover, Mr. Walsh is unaware of any custom in the railroad industry pertaining to the use of safety hydraulic safety door closers on locomotive cab doors. Exhibit D.

Because the engine door at issue in this litigation had a "secure and operable latching device" as required under the provisions of 49 CFR 229.119, and because the component parts suggested by plaintiff's expert to keep an engine door open should not be considered as an integral or essential part of a completed locomotive, the plaintiff's LBA claim against STR fails and should be dismissed, as a matter of law.

### 4.   CONCLUSION

As set forth above, the defendant, Springfield Terminal Railway Company, is entitled to

14

the entry of summary judgment in its favor, pursuant to Fed. R. Civ. P. 56(b), based upon the undisputed facts and applicable law. Based upon the plaintiff's failure to describe how his alleged injury occurred, all claims brought against the defendant would be based upon speculation and conjecture. The plaintiff has failed to demonstrate any negligent conduct on the part of the defendant or any defective condition with the engine door which could have caused his alleged injury in support of his claims brought pursuant to the Federal Employers' Liability Act. Proper warnings were provided to the plaintiff advising against the hazard of catching a finger between a door and a door jamb, and the plaintiff's failure to heed such warnings cannot be deemed to be evidence of the defendant's negligence. Moreover, the plaintiff's claims, pursuant to the Locomotive Boiler Act, fail because the component parts he alleges should have been installed on the engine door were not required by any applicable federal regulation and would not constitute integral or essential parts of a completed locomotive. For the foregoing reasons, the defendant, Springfield Terminal Railway Company, respectfully requests that this Honorable Court enter summary judgment in its favor, pursuant to Fed. R. Civ. P. 56(b), and dismiss all claims brought against the defendant by the plaintiff, Robert Sawyer.

### THE DEFENDANT RESPECTFULLY REQUESTS A HEARING AND ORAL ARGUMENT ON THE ISSUES RAISED IN THIS MOTION.

Respectfully submitted,
By the defendant,
Springfield Terminal Railway Company,
By its attorneys,

John J. O'Brien, Jr.
BBO # 375885
Francis S. McGurrin
BBO # 630847
O'Brien & von Rosenvinge
27 Mica Lane, Suite 202
Wellesley, MA 02481
(781) 239-9988

DATED: August 5, 2005

## CERTIFICATE OF SERVICE

I, John J. O'Brien, Jr., attorney for the defendant, Springfield Terminal Railway Company., hereby certify that on the 5th day of August, 2005 I forwarded true copies of: DEFENDANT, SPRINGFIELD TERMINAL RAILWAY COMPANY'S, MOTION FOR SUMMARY JUDGMENT by first class mail, postage pre-paid to the following counsel of record:

Paul J. Riley, Esq.
Barish Law Offices, P.C.
Three Parkway, Suite 1320
1601 Cherry Street
Philadelphia, PA 19102

Ronald M. Davids, Esq.
Davids & Schlesinger
40 Washington Street, Suite 250
Wellesley, MA 02481

John J. O'Brien, Jr.

16