UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SAWYER | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| | ) |
| SPRINGFIELD TERMINAL RAILWAY | ) CASE NO. 04 11945 JLT |
| COMPANY | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Robert Sawyer, respectfully requests this Honorable Court deny the Summary Judgment Motion filed by Defendant, Springfield Terminal Railway Company ("Springfield"). Plaintiff has brought an action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C.S. §§ 51 et seq., and the Locomotive Boiler (Inspection) Act ("LBIA"), 49 U.S.C.S. §§ 20701 et seq. Plaintiff states that in response to the Motion filed by Defendant, material issues of fact exist requiring a denial of Defendant's Motion.

Plaintiff's response to Defendant's Statement of the Case in its Brief is as follows:

1.    Denied. Plaintiff's Complaint speaks for itself

2.    Denied. Plaintiff's Deposition testimony speaks for itself.

3.    Denied. Plaintiff's Deposition testimony speaks for itself.

4.    Denied. Plaintiff's Deposition testimony speaks for itself.

1

5.    Admitted in part, denied in part. It is admitted that Plaintiff had the tip of his right finger amputated. As to the remaining allegations of this paragraph, Plaintiff's Deposition testimony speaks for itself.

6.    Admitted in part, denied in part. It is admitted that the door closed upon Plaintiff's finger. It is denied that the cited section of the hearing transcript proves Plaintiff did not recollect whether he was in the process of closing the door when the incident occurred. The question asked was compound, unclear, confusing and/or otherwise objectionable. By way of further response, plaintiff had never previously closed the door upon his own finger, nor had he ever closed a locomotive door when his finger was in danger of being struck. See Affidavit attached hereto as Exhibit "A."

7.    Denied. Plaintiff's Deposition testimony speaks for itself.

8.    Admitted in part, denied in part. It is admitted that the engine door which is the subject matter of this litigation weighed approximately one hundred and twenty-five (125) pounds. It is denied that the door was equipped with an operable latching device as required under 49 CFR 229.119. To the contrary. The door in question failed to have an operable latching device to hold open the door as required by 49 CFR 229.119. See May 2, 2005 Report of Lewis N. Catone, attached hereto as Exhibit "B". Additionally, the Public Law Board (PLB), after reviewing the entire body of evidence in this matter, agreed that the door failed to have a proper latching device. See Public Law Board Award Order No. 4623, Case No. 130, attached hereto as Exhibit "C".

9.    Admitted in part, denied in part. It is admitted that Springfield employees were required to follow certain safety rules, but it is denied that Plaintiff failed to follow all necessary and proper safety rules in the performance of his duties.

10.    Admitted, except to the extent that the Defendant's safety rules speak for themselves.

11.    Admitted in part, denied in part. It is admitted that Springfield employees were required to follow certain safety rules, but it is denied that Plaintiff failed to follow all necessary and proper safety rules in the performance of his duties.

12.    Admitted in part, denied in part. It is admitted that Defendant's employees conducted an inspection on October 23, 2003. It is denied that the appurtenances were without defect. The lack of a latching device to hold open the door constitutes a defect. By way of further response, see response to Paragraph 8, above.

13.    See response to Paragraph 6, above.

14.    Denied. Plaintiff's Deposition testimony speaks for itself.

15.    Denied. Plaintiff's Deposition testimony speaks for itself.

16.    Denied. Plaintiff's Answers to Interrogatories speak for themselves. By way of further response, see response to Paragraph 6, above.

17.    Admitted.

## PLAINTIFF'S CONTESTED ISSUES OF FACT

1.    On or about October 23, 2003, while holding his kit bag, Plaintiff stepped into the nose position of a locomotive cab. In the process of detraining, Plaintiff opened the steel "nose" door with no resistance and, while holding his kit bag in his left hand, was caused to sustain severe personal injury when the "nose" door suddenly slammed back with great force and partially amputated his right index finger. See Exhibit "B".

2.    The open "nose" door was slammed back by a gust of heavy wind. See Exhibit "B," and attachments.

3.    Plaintiff followed all necessary and proper safety rules in the performance of his duties. See generally Plaintiff's Deposition, attached to Defendant's Motion, as well as Exhibit "A".

4.    Plaintiff had never previously closed such a door upon his own hand, nor had he ever closed a locomotive door when his finger was even in danger of being struck. See Exhibit "A".

5.    Strong winds could close this type of door. See Hearing Testimony of Defendant's Road Foreman of Engines, November 19, 2003 Transcript attached as Exhibit "D".

6.    The locomotive at issue is a GP-40-2 type of locomotive. It had been purchased by the Defendant from the Canadian National Railroad System. Exhibit "B," at 6 - 7. The locomotive had been modified by the Canadian National Railroad System prior to purchase by the Defendant. Exhibit "B," at 6.

3

had been modified by the Canadian National Railroad System prior to purchase by the Defendant. Exhibit "B," at 6.

7.    Following purchase by the Defendant, the locomotive "nose" door was never equipped with a latching device to secure it in the open position and/or a commercial safety hydraulic door closer. See Exhibit "B," at 6 - 7.

8.    It is the custom and practice in the railroad industry for exterior doors, such as the "nose" door at issue, to be equipped with a latch to secure it in the open position and/or a commercial safety hydraulic door closer. See Exhibit "B," at 7.

9.    At all times material hereto, the locomotive "nose" door in question failed to have an operable latching device to hold open the door or a commercial safety hydraulic door closer. See generally Plaintiff's Deposition, attached to Defendant's Motion, as well as Exhibit "B". See also Hearing Testimony of Defendant's Road Foreman of Engines.

10.    The locomotive "nose" door in question failed to have an operable latching device to hold open the door as required by, and in violation of, 49 CFR 229.119. Exhibit "B". See Exhibit "B".

11.    Springfield was in violation of both the FELA and LIA as the engine "nose" door in question failed to have an operable latching device to hold open the door. See Exhibit "B," at 7 - 8.

12.    Plaintiff's injuries were caused by the failure of Springfield to supply and equip a locomotive "nose" door with an operable latching device. See Exhibit "B," at 7 - 8.

4

FACTS

This is an action arising out of an incident that occurred at Springfield Terminal Railway Company's Somerville Rail Yard. On or about October 23, 2003, Plaintiff was employed by the Defendant railroad as a conductor and was working upon Locomotive MEC-515. See Exhibit "B," at 3. On that date, Plaintiff picked up his kit bag and entered the nose position of the locomotive to detrain and align the switch. Id. After stepping into the nose position of the cab, Plaintiff walked approximately six feet to the engine or "nose" door. In the process of detraining, Plaintiff opened the steel "nose" door with no resistance and, while holding his bag in his left hand, was caused to sustain severe personal injury when the door suddenly slammed back with great force and partially amputated his right index finger. Id. Plaintiff had never previously closed such a door upon his own hand, nor had he ever closed a locomotive door when his finger was even in danger of being struck. See Exhibit "A.

The locomotive at issue is a GP-40-2 type of locomotive. It had been purchased by the Defendant from the Canadian National Railroad System. Exhibit "B," at 6 - 7. The locomotive had been modified by the Canadian National Railroad System prior to purchase by the Defendant. Exhibit "B," at 6. Following purchase by the Defendant, the locomotive "nose" door was never equipped with a latching device to secure it in the open position and/or a commercial safety hydraulic door closer. See Exhibit "B," at 6 - 7. It is the custom and practice in the railroad industry for exterior doors, such as the "nose" door at issue, to be equipped with a latch to secure it in the open position and/or a commercial safety hydraulic door closer. See Exhibit "B," at 7.

In 2004, plaintiff instituted this action in the United States District Court for the District of Massachusetts, pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C.S. §§ 51 et

seq., and the Locomotive Inspection Act ("LIA"), 49 U.S.C.S. §§ 20701 et seq., for personal injuries sustained in the course and scope of his employment with Springfield. On or about May 2, 2005, plaintiff obtained a liability expert report from Lewis N. Catone. See Exhibit "B." Mr. Catone is a railroad practices and safety expert, with approximately forty years of experience working for Conrail, Penn Central, New York Central and Metro North Commuter railroads, who has "[a]bsolute and total familiarity with Federal Regulations, railroad operating and safety rules of all respective crafts and departments...[as well as] with all phases of railroad accident investigations..." See Resume of Lewis N. Catone, attached hereto as Exhibit "E." In his report, Mr. Catone has opined that Springfield was in violation of both the FELA and LIA as the engine door in question failed to have an operable latching device to hold open the door as required by, and in violation of, 49 CFR 229.119. See Exhibit "B". Additionally, a Public Law Board (PLB), after reviewing the entire body of evidence in this matter, agreed that the door failed to have a proper latching device. See Public Law Board Award Order No. 4623, Case No. 130, attached hereto as Exhibit "C".

## ARGUMENT

### 1. Summary Judgment Standard

Summary judgement's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 47 (1st Cir. 1990). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgement stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the

6

judge to superimpose his own ideas of probability and likelihood." Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987). In determining whether summary judgement is appropriate, the Court must "look at the record in the light most favorable to the party opposing the motion." Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 (1962); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 47 L. Ed. 2d 754, 96 S. Ct. 1495 (1976). Similarly, the Court must "indulge all inferences favorable to the party opposing the motion" for summary judgement. Hahn, 523 F.2d at 464; Horibin v. Providence & Worcester R.R., 352 F. Supp. 2d 116, 2005 U.S. Dist. LEXIS 287 (D. Mass. 2005). Among other things, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him. . . ." Greenburg, 835 F.2d 932 citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). And, it can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. See also Wheelock v. R.I., 2002 U.S. Dist. LEXIS 8630 (D.R.I. Apr. 8, 2002).

In order to sustain a summary judgement motion, the movant must put the ball in play, averring "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both "material" and "genuine." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Garside, 895 F.2d 46; Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989); Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986); Hahn, 523 F.2d at 464. "In this regard,

'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

Here, plaintiff brought suit against Springfield under the FELA. Recognizing the "special need" to protect railroaders from the inherently dangerous nature of their work, Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 329 (1958), Congress enacted the statute to "shift part of the human overhead of doing business" from the employees to their employers. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994). The Act strips employers of their common law defenses of assumption of the risk and contributory negligence as a bar to recovery, Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506 (1957), and abandons general concepts of proximate cause. Green v. River Term. Ry., 585 F. Supp. 1019, 1024 (N.D.Ohio 1984), aff'd, 763 F.2d 805 (6th Cir. 1985).

The standard for submitting an FELA case to the jury is also much less stringent than in the ordinary negligence action. Rogers, 352 U.S. at 506; Mendoza v. Southern Pac. Trans. Co., 733 F.2d 631, 633 (9th Cir. 1984). The "test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury." Rogers, 352 U.S. at 506 (emphasis added).

> It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury...Judges are to fix their sights primarily to make that appraisal and, if

8

that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities.

Id. at 507. Given the low evidentiary threshold for submission to the jury in an FELA case, the federal courts have "liberally construed" the FELA to allow employee recovery. Gottshall, 512 U.S. at 543; Robert v. Consolidated Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987). Accordingly, a "case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." Syverson v. Consolidated Rail Corp., 19 F.3d 824, 828 (2d Cir. 1994).[1] As such, only "slight" or "minimal" evidence of negligence is needed to raise a jury question in a FELA action.[2] This is because the right to a jury trial is "part and parcel of the remedy afforded" under the FELA. Bailey v. Central Vermont R.R. Co., 319 U.S. 350, 354, 87 L. Ed. 1444, 63 S. Ct. 1062 (1943); New York, N. H. & H. R. Co. v. Zermani, 200 F.2d 240 (1st Cir. 1952).[3] And

---

[1]See also Pehowic v. Erie Lackawanna R.R., 430 F.2d 697, 699-700 (3d Cir. 1970) (court may only withdraw a FELA case from the jury "in the extremely rare instance" where there is "zero probability" of negligence); Allen v. Seacoast Products, Inc., 623 F.2d 355, 360 (5th Cir. 1980) (directed verdict may be granted only if "there is a complete absence of probative facts" suggesting employer negligence).

[2]See Armstrong v. Burlington N. R.R., 139 F.3d 1277 (9th Cir. 1998); Mullahon v. Union Pac. R.R., 64 F.3d 1358, 1363-64 (9th Cir. 1995); Pierce v. Southern Pac. Trans. Co., 823 F.2d 1366, 1370 (9th Cir. 1987); Mendoza v. Southern Pacific Transp. Co., 733 F.2d 631, 632 (9th Cir. 1984); Ybarra v. Burlington Northern, Inc., 689 F.2d 147, 149 (8th Cir. 1982); Burns v. Penn Cen. Co., 519 F.2d 512, 514 (2d Cir. 1975); Boeing Co. v. Shipman, 411 F.2d 365, 370-73 (5th Cir. 1969). See also Harbin v. Burlington Northern R.R., 921 F.2d 129, 131 (7th Cir. 1990) (court embraced more relaxed "scintilla of evidence" rule); 5A J. Moore & J. Lucas, Moore's Federal Practice § 0.02[1] (2d ed. 1982) (courts have adopted a standard similar to "scintilla rule" in FELA cases).

[3]See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360 (1962); O'Connell v. Nat'l R.R. Pass. Corp., 922 F.2d 1039, 1042 (2d Cir. 1991); Johannessen v. Gulf Trading & Trans. Co., 633 F.2d 653, 656 (2d Cir. 1980). See also Norris v. Burlington N. Santa Fe, 2003 U.S. Dist. LEXIS 5592 (N.D. Ill. 2003) ("FELA is generally a pro-plaintiff statute, and the plaintiff's right to a jury determination is part and parcel of the liberal remedy afforded the working person under the FELA").

the power of a jury to "pass upon" issues of fault and causation "must be most liberally viewed." Johannessen v. Gulf Trading & Trans. Co., 633 F.2d 653, 656 (2d Cir. 1980); O'Connell v. Nat'l R.R. Pass. Corp., 922 F.2d 1039, 1042 (2d Cir. 1991)(citing Eggert v. Norfolk & Western Ry., 538 F.2d 509, 511 (2d Cir. 1976)) (a jury's role "is significantly greater in FELA cases than in common law negligence actions").

In the case *sub judice*, the Defendant has raised four issues in its moving papers: (1) Plaintiff cannot prove the existence of a defective condition or that Defendant had actual or constructive notice of the alleged defective condition; (2) Plaintiff's allegation of the defective condition is based upon speculation and conjecture; (3) Adequate warnings were provided to Plaintiff and Plaintiff's alleged failure to heed such warnings does not constitute negligence on the part of Defendant; and (4) Plaintiff cannot prove his injury was caused by Defendant's failure to install equipment that is required by federal regulations or that constitutes an integral or essential part of a locomotive. All four contentions lack merit.

## 2. Defendant Had Actual and/or Constructive Notice of the Defective Condition of the Engine Door.

The FELA establishes a duty on the part of a common carrier to use reasonable care in providing employees a safe work environment. See Bailey v. Central Vermont R.R. Co., 319 U.S. 350, 352, 87 L. Ed. 1444, 63 S. Ct. 1062 (1943); Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990). Ensuring that employees have proper equipment with which to perform their work assignments falls within this duty. See Rodriguez v. Delray Connecting Ry., 473 F.2d 819, 821 (6th Cir. 1973). Moreover, a common carrier must take reasonable precautions, including inspections of its property and equipment, to protect its employees from potential harm. Cazad v. Chesapeake

10

& Ohio Ry., Co., 622 F.2d 72, 75 (4th Cir. 1980); see also Shenker v. Baltimore & Ohio Ry. Co., 374 U.S. 1, 10, 10 L. Ed. 2d 709, 83 S. Ct. 1667 (1963). If an employer learns or should learn of a potential hazard, it must take reasonable steps to investigate and to inform and protect its employees, or it will be liable when injury occurs. See Mohn v. Marla Marie, Inc., 625 F.2d 900, 902 (9th Cir. 1980).

The catalyst which ignites this duty is knowledge, either actual or constructive. See Schilling v. Delaware & H. R. Corp., 114 F.2d 69, 71 (2d Cir. 1940). In order to prevail on a claim of defective equipment, a plaintiff must demonstrate that the defendant had actual or constructive notice of the defect or that the injury was reasonably foreseeable to the defendant. See, e.g., Baynum v. Chesapeake & Ohio Ry. Co., 456 F.2d 658, 660 (6th Cir. 1972); Adams, 899 F.2d at 539. The test of foreseeability, however, "does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur." Green v. River Terminal Ry., 763 F.2d 805, 808 (6th Cir. 1985); see also Gallick v. Baltimore & O.R.R., 372 U.S. 108, 120, 9 L. Ed. 2d 618, 83 S. Ct. 659 (1963); Syverson, 19 F.3d at827; McCracken v. Richmond, Fredericksburg & Potomac R.R., 240 F.2d 484, 487 (4th Cir. 1957) ("the particular and exact manner of the accident need not be foreseen").[4] Indeed, under the FELA, a railroad is liable for all

_____

[4]In Gallick, for example, the railroad had permitted to exist a fetid pool of water that had attracted a variety of vermin and insects. An employee bitten by an insect in the vicinity of this pool suffered a reaction so severe as to require the amputation of his leg. "Reasonable foreseeability" was an issue because there was no evidence that the insect at issue was hatched from the stagnant pool or was attracted there by it, and because the medical consequence was highly unusual. The trial court awarded damages, but the state appeals court reversed, finding an insufficient causal connection to permit a jury verdict. The United States Supreme Court reversed and remanded, holding that since the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area--it is clear that the jury concluded that respondent should have realized the increased likelihood

11

unexpectedly severe or even unlikely consequences of its wrongdoing. Gallick, 372 U.S. 108.

Importantly, though, "notice" and "forseeability," present issues of fact, and "as with all factual

issues under FELA, the right of the jury to pass on [them] must be liberally construed." Gallose v.

Long Island R.R. Co., 878 F.2d 80, 85 (2d Cir. 1989).

Defendant's initial argument is based on the mistaken belief that there is no evidence of any

defective condition. Defendant's Summary Judgment Brief at 8. This, of course, ignores the report

of Plaintiff's liability expert, Lewis N. Catone, and the Code of Federal Regulations ("CFR"). CFR

Title 49, Part 229.119, requires that cab doors shall be equipped with a secure and operable latching

device.[5] See Exhibit "B". Here, the Defendant failed to provide an engine door with a proper

latching device. By failing to do so, it failed to provide Plaintiff safe equipment with which to work,

thereby breaching the duty it owes Plaintiff under the FELA to provide the Plaintiff a safe working

environment. At the very least, this evidence demonstrates a dispute as to a material issue of fact

that dooms the Defendant's summary judgement motion.

Defendant also contends that Plaintiff cannot show actual or constructive notice of a

defective condition. Defendant's Brief at 8. Notice generally presents an issue of fact. Gallose, 878

_____

of an insect's biting petitioner while he was working in the vicinity of the pool." Gallick, 372 U.S.
at 118-119. The plaintiff was therefore not required to specifically demonstrate that the untended
condition could be expected to result in so terrible a harm. Indeed, the Gallick Court held that:

> ...for a defendant to be liable for consequential damages he need not foresee the
> particular consequences of his negligent acts: assuming the existence of a threshold
> tort against the person, then whatever damages flow from it are recoverable.

Gallick, 372 U.S. at 121.

[5]Cab seats shall be securely mounted and braced. Cab doors shall be equipped with a secure
and operable latching device. 49 CFR. 229.119(a).

12

F.2d at 85. In the instant matter, the Defendant purchased the locomotive at issue from the Canadian National Railway System. That locomotive was modified by the Canadian National Railway System such that the locomotive "nose" doors had no latching mechanism to hold open those doors. Once purchased by the Defendant, although the locomotives had no latching devices to hold open the doors as required by the CFR, the Defendant chose to ignore the CFR by failing to equip the door with a proper latching device. This omission occurred long before the Plaintiff was injured, such that a jury could reasonably impart constructive notice to the railroad. "[T]he test for foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather, it is sufficient if the negligent person might reasonably have foreseen that an injury might occur ...." Miller v. Cincinnati, New Orleans & Texas Pacific Ry. Co., 203 F. Supp. 107, 113 (E.D. Tenn. 1962), aff'd, 317 F.2d 693 (6th Cir. 1963). Defendant should have known that the absence of a latching device to hold open a locomotive "nose" door could cause injury to engineers and conductors working upon such locomotives as those doors could conceivably close on their own, or by way of forces such as wind and/or engine tilt, and cause injury. The Defendant could have discovered and fixed this defect simply by following the CFR. It chose not to do so.

To support its argument that Defendant had no constructive notice, Springfield relies upon a Seventh Circuit decision, Williams v. AMTRAK, 161 F.3d 1059 (7th Cir. Ill. 1998), to support its claim that plaintiff has failed to show any evidence of notice or constructive notice. In Williams, a conductor was injured when a door closed on him as he was leaning to pick up a bag. Williams, however, differs significantly from the case *sub judice* because, in Williams, the plaintiff presented no evidence at all of actual or constructive knowledge of the defect in a coach car door which struck

13

him. Id. at 1063. Specifically, Williams failed to present any evidence the railroad could have discovered any defect and, instead, argued he did not have to prove notice. Id. In the instant case, unlike in Williams, the Defendant violated a Federal Regulation. Obviously, it had notice that a latching devise was required as the CFR plainly demands that doors be so equipped. To support his position, Plaintiff has presented the report of Lewis N. Catone, a railroad expert, who opines that Springfield was in violation of both the FELA and LIA, as the engine door in question failed to have an operable latching device to hold open the door as required by custom and practice as well as by 49 CFR 229.119. See Exhibit "B". As such, evidence exists upon which a jury may infer constructive knowledge.

## 3. Plaintiff's Allegation that His Injury Was Caused by the Defective Condition of the Engine Door Is Not Based on Conjecture or Speculation.

Despite Defendant's assertion to the contrary, Plaintiff's lack of knowledge as to how his injury occurred does not suggest that summary judgment is appropriate. To the contrary, in an FELA case, liability may be inferred completely from circumstantial evidence. See Rogers, 352 U.S. at 508; Mendoza, 733 F.2d at 633; Barboza, 434 F.2d at 123; Pehowic, 430 F.2d at 699; Moore v. Chesapeake & Ohio Ry., 493 F. Supp. 1252, 1265 (S.W.Va. 1980), aff'd, 649 F.2d 1004 (4th Cir. 1981). Indeed, it may be based exclusively on "facts and circumstances which, in light of ordinary experience, reasonably suggest that [the] defendant's negligence produced the injury." Van Holt v. Nat'l R.R. Pass. Corp., 283 Ill.App.3d 62, 68, 669 N.E.2d 1288, 1293 (1996), cert. denied, _ U.S. _, 117 S.Ct. 1694, 137 L.Ed.2d 820 (1997). And the jury in an FELA case possesses particularly "broad powers" to "engage in inferences." Mendoza, 733 F.2d at 633; Barboza v. Texaco, Inc., 434 F.2d 121 (1st Cir. 1970). A verdict is not "one of speculation and conjecture [simply] because

14

inferences are arrived at by the application of general experience and common reaction to the evidentiary situation." Henwood v. Coburn, 165 F.2d 418, 423 (8th Cir. 1948).

> Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference.

Lavender v. Kurn, 327 U.S. 645, 653 (1946).

The courts, therefore, have liberally applied Rogers' standard in favor of FELA plaintiffs. In Harris v. Pennsylvania R.R., 361 U.S. 15 (1959), the plaintiff slipped on a cross-tie while engaged in retracking two derailed boxcars. He instituted an FELA case and, at trial, alleged he was injured because the cross-tie was covered with either grease or oil and was elevated a substantial distance above ground level. Both negligence claims were submitted to the jury, and the Supreme Court, in a per curium ruling citing Rogers, held there was sufficient evidence to support the jury's finding of employer liability. The only evidence that there was any grease on the cross-tie, however, was Harris's testimony on cross-examination that he had seen some grease on the sole of his right shoe after he fell. See Harris v. Pennsylvania R.R., 168 Ohio St. 582, 584, 156 N.E.2d 822, 824 (1959). A foreman had also testified that the railroad periodically lubricated its switches. 361 U.S. at 26. Yet, Harris had never stated in his accident report, at his deposition, or on direct examination that he "encountered grease at any stage of the operation." 361 U.S. at 26-27 (Harlan, J., dissenting). Nor had he ever testified "he had seen grease anywhere in the vicinity, still less on the particular cross-tie where his foot had rested." Id. In fact, Harris only observed mud on the tie in question. 156 N.E.2d at 824. As the court of appeals noted, however, there was sufficient evidence to create a jury question as there was grease on the shoe of the foot Harris had planted on the tie and none on the one

15

he had placed on the ground. Harris v. Pennsylvania R.R., 108 Ohio App. 541, 545-46, 146 N.E.2d

744, 747 (1957).

> The jury may well have reasoned that grease would have been found on both shoes
> had grease been present on the ground other than on the tie and that since the plaintiff
> saw it only on the shoe that had been on the tie, the jury could have inferred that it
> came from the tie. This testimony, considered with the obvious fact that a foot
> slipping on a surface gives such a person some feeling as to whether the slipping is
> due to mud or grease or oil...would justify a jury finding that there was grease or oil
> on the tie. After all, the jury saw and heard the witness and was in a position to
> determine the credit and the weight to be given his testimony. Moreover, they had
> the right to draw fair and reasonable inferences from the testimony in the light of all
> surrounding circumstances. This was their function under the law, and, to hold...that
> there was insufficient evidence to support the findings of fact would, in our opinion,
> be tantamount to denying this plaintiff the right to have his complaint passed upon
> by a jury, a clear right accorded him under the [FELA].

146 N.E.2d at 747.

A similar result obtained in Taluzek v. Illinois Cen. Gulf R.R., 225 Ill.App.3d 72, 626 N.E.2d

1367 (1993). Taluzek sustained personal injuries in the process of restarting a locomotive engine.
He had just walked down the catwalk, opened the engine compartment doors, and turned on the
starter switch when his right leg "slipped out from under him." 626 N.E.2d at 1371. Taluzek
instituted an FELA action alleging that he fell because the defendant permitted oil or grease to
accumulate on the catwalk. Taluzek, however, never saw what he had slipped on. Id. He could only
remember that it "felt like either grease or oil." Id. Nor did he testify that he noticed anything unusual
on the catwalk or submit any evidence that there were traces of oil on his shoes. Id. A co-worker did
observe a pool of oil or "some other substance" dripping from the catwalk outside the engine
compartment after the accident. Id. Yet, even he did not observe any footprints in the oil. Id.
Nonetheless, the court of appeals, reviewing the propriety of the denial of Taluzek's motion for judg-
ment notwithstanding the verdict, held that the evidence created a "substantial factual dispute." Id.

16

[P]laintiff in the present case bore the burden of proving that there was something unsafe or defective on the locomotive which caused his fall. The evidence presented established that no one, not even plaintiff to a great extent, witnessed the actual fall. Thus, the jury had to weigh the testimony and assess witness credibility in order to determine what occurred...[I]t was up to the jury to decide whether plaintiff stepped in the oil, causing the fall.

Id. at 1373.

In Howard v. Missouri Pac. R.R., 295 S.W.2d 68 (Mo. 1956), the court similarly recognized the light evidentiary burden of an FELA plaintiff. At trial, Howard alleged he was injured when he tripped over a piece of debris on a concrete runway adjacent to defendant's tracks. Though he did not know what caused his fall, he testified that the object "felt like" a "bolt" or a "pin." Id. at. 71. He had experienced a "rolling" sensation under the ball of his foot before the accident and had also heard the "clink of metal." Id. Yet, not a single witness, not even Howard himself, stated they had seen a bolt or pin at the time of the incident. Id. at 72.[6] There was, however, some testimony that the railroad's employees were constantly walking over the runway with tools and car parts. Id. The court insisted that Howard had submitted sufficient evidence to create a triable issue of employer negligence under the FELA.

It is the position of defendant-respondent that the facts [sic] that plaintiff could not testify of [sic] having seen and visually identified the object over which he fell and that no other witness saw or discovered the bolt or pin when or after plaintiff fell are fatal to plaintiff's case...[W]e believe we should not go so far as to say as a matter of law that plaintiff's identification of the round object over which he fell as being a bolt or pin, such as used in repairing cars, by the exercise of his sense of touch in feeling the object roll under his foot and by hearing the metallic 'click' of metal on concrete was insufficient and unsubstantial in tending to show the object over which he fell was a bolt or pin.

_____

[6]The plaintiff alleged that it must have "kick[ed] toward the tracks" after the accident. Id. at 71.

17

Id. at 72.[7]

And in Barboza v. Texaco, Inc., 434 F.2d 121 (1st Cir. 1970), a First Circuit Jones Act case,

an employee slipped on squash while descending a stairway. Squash was found on his foot and on

the stairway. After a jury found in favor of the employee, the employer appealed, arguing that there

was no basis, other than speculation, for determining how the squash got onto the employee's foot.

The court denied the petition, holding the evidence warranted the jury in finding it more probable

than not that it was not the employee who brought the squash onto the stairs. The court held once

the jury had inferred the squash was tracked onto the stairs by another member of the crew, it was

reasonable then to infer negligence. Like the Defendant here, Texaco attempted to claim that the

more plausible explanation for the presence of the squash was that it was tracked in by the plaintiff

himself. The First Circuit disagreed:

> It does not matter that, from the evidence, the jury may also with reason, on grounds
> of probability, attribute the result to other causes," including plaintiff's own
> negligence. 352 U.S. at 506, 77 S. Ct. at 448. This language is consistent with that
> of an earlier case, Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S. Ct. 740, 744, 90
> L. Ed. 916  where the Court said, "Only when there is a complete absence of
> probative facts to support the conclusion reached does a reversible error appear.
> Where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to
> discard or disbelieve whatever facts are inconsistent with its conclusion." By this
> language the Court has evidently rejected any test as strict as appellant's
> more-probable-than-not standard for limiting jury inferences. In these cases, and in
> later ones resting on their authority, cited post, the Court has allowed jury inferences
> as to both the cause of an accident and as to the presence of negligence, on the basis
> of evidence which reasonably supports the inferences but does not make them more
> probable than not.

---

    [7]See also Norfolk & Western Ry. v. Hughes, 247 Va. 113, 115, 439 S.E.2d 411, 412, cert.
denied, 511 U.S. 1128 (1994) (plaintiff tripped, turned, and "only thing" he saw was split cross-tie
"sticking up"); Wiser v. Missouri Pac. R.R. Co., 301 S.W.2d 37, 39 (Mo. 1957) (plaintiff's foot
"rolled, "gave way," and he looked at ground and saw rock); Buffo v. Baltimore & Ohio R.R., 364
Pa. 437, 439, 72 A.2d 593, 594 (1950)(plaintiff thought he "slip[ped] on...rivet heads or pieces of
bolts" and these were lying around yard).

Barboza, 434 F.2d at 123.

The two cases cited by Defendant to support its contention that Plaintiff's allegations are based upon speculation differ significantly from the instant matter. The first case, Beale v. Hardy, 769 F.2d 213 (4th Cir. 1985), is not even an FELA case but, rather, involves exposure to silica. The second case, Deans v. CSX Transportation, 152 F.3d 326 (4th Cir. 1998), actually refutes Defendant's later argument with respect to the LIA claim.

In Deans, the plaintiff conductor alleged back and neck injuries because of defective handbrakes. Id. at 328. He brought his claim under the FELA and the Federal Employers' Safety Appliance Act ("FESA"), 49 U.S.C.S. § 20301.[8] The lower court granted summary judgment on both of the plaintiff's claims. Id. The Court of Appeals reversed the summary judgment ruling on the FESA. Id. at 330. The distinction between granting summary judgment on the FELA claim and reversing on the FESA claim was found in the plaintiff's failure to introduce any evidence that a pre-accident brake inspection would have prevented his injury. Id.[9] Interestingly, because of the strict liability standard of the FESA, that portion of the District Court order was reversed. Clearly, the analogous nature of the FESA and the LBIA makes it clear that, based on Deans, Plaintiff's LBIA claim in the instant matter would never be dismissed.

Defendant also contends that the conclusions contained in Lewis N. Catone report are based on mere speculation. Defendant's Brief at 9. Defendant then proceeds to postulate various theories which it asserts are more plausible than the conclusions contained in Mr. Catone's report. However

---

[8]The FESA, which relates to brakes, is analogous to the LBIA. Both Acts impose absolute liability on railroad carriers for violation of safety standards.

[9]This is clearly distinguishable from Plaintiff's claim because, had a latching device been found on the door, the door simply would not have closed on Plaintiff's finger.

skillfully Defendant tries to claim the issue revolves around *how* the door shut on Plaintiff's finger, liability under the FELA is based upon *why* the door was allowed to come down on Plaintiff's finger at all. The door in question did not have the latching device that is both the custom and practice in the industry, as well as required by CFR. 229.119. As a result, the Defendant was negligent for failing to provide the Plaintiff with a proper work place by failing to equip its locomotive door with a proper latching device to hold it open.

Mr. Catone has opined that, based on the application of general experience and available evidence, the wind may have caused this unlatched door to come forward. See Exhibit "B". The Defendant disagrees, presumably believing instead that the Plaintiff closed the door on his own hand. In either event, the issue of "wind v. no wind" is one solely of comparative negligence. The FELA employs a true comparative negligence standard. See 45 U.S.C. § 53 ("contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee"). A jury will be required to determine the negligence attributable to either or both parties. Although Defendant contends that other witnesses will testify the wind was not a factor, this only underscores that an issue of material fact exists as to whether or not the Plaintiff was comparatively negligent.

## 4. Defendant's Alleged Warnings of the Hazards of Catching a Finger in a Door Frame Do Not Relieve Defendant of Its Negligence.

Defendant asks the Court to find that if, assuming *arguendo*, Plaintiff ignored alleged warnings about putting his hand in the door, Defendant's negligence is vitiated. This is clearly a veiled attempt to argue Plaintiff assumed the risk of his employment. Under the FELA, however, the common law doctrine of assumption of the risk has been rejected. Gottshall, 512 U.S. at 542 -

20

43; Stevens v. Bangor & Aroostook R.R., 97 F.3d 594 (1st Cir. 1996). Thus, even if Plaintiff bears

some level of responsibility for allegedly ignoring warnings, that does not release the Defendant of

its duty to equip its locomotives with the proper latching devices. In order to recover, Plaintiff need

only show that the railroad's negligence played a part, no matter how slight, in causing his injury.

Rogers, 352 U.S. at 506. The question of how much of the injury is attributable to the employee's

own actions is a jury issue. See Pinkham v. Maine C. R. Co., 874 F.2d 875 (1st Cir. 1989) (result

affirmed where comparative negligence issue submitted to the jury).

In addition to his FELA claim, however, Plaintiff also brought suit under the LIA, 49

U.S.C.S. §§ 20701 et seq., alleging that the subject engine door "malfunctioned, was defective and

was improperly and/or poorly maintained." Importantly, Section 53 of the FELA eliminates the

defense of contributory negligence where the employer violates a safety statute such as the LIA. See

Kelly v. Keystone Shipping Co., 281 F. Supp. 2d 313 (D. Mass. 2003). The relevant FELA

provision states that:

> No such employee who may be injured or killed shall be held to have been guilty of
> contributory negligence in any case where the violation by common carrier of any
> statute enacted for the safety of employees contributed to the injury or death of such
> employee.

45 U.S.C. § 53. "Over the years, this provision has been liberally enforced." Pratico v. Portland

Terminal Co., 783 F.2d 255, 260 n.2 (1st Cir. 1985). Accordingly, regardless of whether or not

warnings were ever provided and/or ignored by the Plaintiff, the Defendant will be liable for all the

damages if the jury determines that the Defendant violated the LIA. Comparative negligence will

not be a factor.

## 5. Defendant Failed to Comply With 49 CFR 229.119(a) in Violation of the Locomotive Inspection Act ("LIA")

The LIA provides in pertinent part:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances – (1) are in proper condition and safe to operate without unnecessary danger of personal injury; (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and   (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. The LIA is substantively, if not in form, an amendment to the FELA, which dispenses " with the necessity of proving . . . negligence . . . in certain classes of [FELA] suits." Urie v. Thompson, 337 U.S. 163, 188-190, 93 L. Ed. 1282, 69 S. Ct. 1018 (1949). The prime purpose of the LIA is to enhance safety of employees and passengers. See e.g. Lilly v. Grand Trunk Western Railroad Co., 317 U.S. 481, 486, 87 L. Ed. 411, 63 S. Ct. 347 (1943) ("The Act, like the Safety Appliance Act, is to be liberally construed in light of its prime purpose, the protection of employees and others by requiring the use of safe equipment")(internal citations omitted); Urie v. Thompson, 337 U.S. 163, 190, 93 L. Ed. 1282, 69 S. Ct. 1018 (1949) ("We do not doubt that the prime purpose of the Boiler Inspection Act [now the LIA] was the protection of railroad employees and perhaps also of passengers and the public at large from injury due to industrial accident") (internal citations omitted); Matson v. Burlington Northern Santa Fe Railroad, 240 F.3d 1233, 1235 ("FELA and LIA are 'remedial and humanitarian' statutes that impose two separate types of liability to protect the safety of railroad employees") (citing King v. S. Pac. Transp. Co., 855 F.2d 1485, 1488 n.1 (10th Cir. 1988)). Not surprisingly, the LIA imposes strict liability on railroad carriers for violations of its safety standards. Urie, 337 U.S. at 188-190. Thus, railroad employers such as Springfield are

22

strictly liable for injuries resulting from LIA violations. Horibin v. Providence & Worcester R.R., 352 F. Supp. 2d 116 (D. Mass. 2005).

A rail carrier can breach the broad remedial duty of the LIA in two ways; first, by failing to comply with regulations issued by the Federal Railroad Administration ("FRA"), and second, by failing to keep all parts and appurtenances of its locomotives in proper conditions and safe to operate without unnecessary peril to life or limb. Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088, 1091 (4th Cir.), cert. denied, 484 U.S. 851 (1987). Here, the evidence shows that the Defendant violated both criteria. First, there is an applicable Federal Regulation, CFR 229.119(a), that required an operable latching device. The Defendant violated that regulation by failing to equip the locomotive door with such a device to hold open the door. As such, the Defendant violated the LIA. And, second, a door which provides ingress and egress for a conductor such as Plaintiff should be held to constitute an integral or essential part of a locomotive. Passing through such doors is necessary for conductors such as Plaintiff to perform their duties. Accordingly, Courts have universally held that parts and appurtenances of locomotives involving entering and exiting the equipment were to be considered "parts and appurtenances" under the LIA.[10] The latching mechanism is such a "part

---

[10] Gowins v. Pennsylvania R. Co., 299 F.2d 431 (6th Cir.) (slippery walkways on engine), cert. denied, 371 U.S. 824 (1962); Bolan v. Lehigh Valley R. Co., 167 F.2d 934 (2d Cir. 1948) (injury while attempting to board train using bent and worn step); Louisville & N.R. Co. v. Botts, 173 F.2d 164 (8th Cir. 1949) (injury after slipping on floorboard while mounting train); Whelan v. Penn Central Co., 503 F.2d 886 (2d Cir. 1974) (ice on step assembly at rear of locomotive); Bankston v. Chesapeake & Ohio R. Co., 128 Ill. App. 3d 166, 470 N.E.2d 512 (Ill. App. Ct. 1984) (slippery catwalks on locomotive); Delevie v. Reading Co., 176 F.2d 496 (3d Cir. 1949) (gear mechanism above footboard unsafe for access to cab). The foregoing cases are factually similar to the case at hand in that they involve a failure to maintain certain parts of a locomotive that are necessary for ingress and egress and were found to be covered by the LBIA.

and appurtenance" of the locomotive and, therefore, must be maintained "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1).

Faced with the applicable Federal Regulation and the body of law regarding ingress and egress, Defendant ineffectively attempts to distinguish the instant case. Defendant relies almost exclusively upon McGinn v. Burlington Northern R.R. Co., 102 F.3d 295 (7th Cir. 1990). Unlike the instant case, which relates to a part or appurtenances long recognized to be covered by the LIA, McGinn involved the failure to install a luggage rack. Id. at 298. Defendant attempts to equate the McGinn Court's conclusion that a luggage rack was a nonessential device of convenience with a door that provides ingress and egress. Obviously, a train can operate without a luggage rack and, as the Court in McGinn concluded, it was not foreseeable that the lack of a luggage rack could create a hazard. Id. at 301. However, doors allowing ingress and egress are essential and it is certainly foreseeable that a door slamming shut could cause injury.

Springfield also questions Mr. Catone's qualifications to render an opinion on "mechanical" issues, as they relate to 49 CFR 229.119. Under the law, of course, an expert must not be required to satisfy an "overly narrow test" of his qualifications.[11] Indeed, practical experience alone is

_____

[11]See, for example, Lindsey v. Louisville & Nashville R.R. Co., 775 F.2d 1322 (5th Cir. 1985)(expert could testify to safety of loading-unloading operation despite unfamiliarity with type of car in accident; he had training in occupational safety and had worked as switchman for many years); Mittlieder v. Chicago & Northwestern Ry., 413 F.2d 77 (8th Cir. 1969) (experienced railroad engineer could testify to train's required stopping distance; whether he had operated similar trains in same situation went to weight of testimony); Southern Cement Co. v. Sproul, 378 F.2d 48 (5th Cir. 1967) (witness with practical mining experience could testify as expert; fact that he never mined limestone or worked in mine of same size did not disqualify him); Roth v. Bird, 239 F.2d 257 (5th Cir. 1956) (court erroneously required witness show experience in loading lost or similar vessel to opine that negligent loading caused accident); Gindville v. Am.- Hawaiian Steamship Co., 224 F.2d 746 (3d Cir. 1955) (master mariner with substantial sea service could testify to safety of vessel's storage method despite lack of experience with loading steel rods); Hanna v. Fletcher, 261 F.2d 75 (D.C.Cir. 1958), cert. denied, Gichner Iron Works, Inc. v. Hanna, 359 U.S. 912 (1959) (court erred

sufficiient to qualify an expert.[12] See Wellman v. Norfolk & Western Ry., 98 F. Supp. 2d 919 (S.D.

Ohio 2000) (expert with extensive experience in the railroad industry, as an employee, supervisor

and inspector, qualified to render opinion as to the proper maintenance of a rail line). See also Tyus

v. Urban Search Mgt., 102 F.3d 256, 263 (7th Cir. 1996); Hammond v. Int'l Harvester Co., 691 F.2d

646 n.17, 653 (3d Cir. 1982); Notes of Advisory Committee on 2000 amendments.[13] The test is

───────────────

precluding testimony of iron worker on standard of reasonable care in repair of handrail; fact he had
only worked on one staircase like that in case went to weight not admissibility of testimony);Bunt
v. Altec Indus., Inc., 962 F. Supp. 313, 317-18 (N.D.N.Y. 1997) (court improperly excluded
engineer's opinion digger derrick was defective; his lack of familiarity with derrick involved in
incident affected only weight of testimony).

[12]Hammond v. Int'l Harvester Co., 691 F.2d 646 n.17 (3d Cir. 1982); Lowery v. Illinois C.
G. R. Co., 891 F.2d 1187 (5th Cir. Miss. 1990)(expert's railroad experience, which "was in excess
of ten years and included time acting as a train master, an operating rules examiner, a manager of
railroad car repair control, and an inspector of railroad equipment..." sufficient to qualify as an expert
on handbreaks); Knight v. Otis Elevator Co., 596 F.2d 84 n.18 (3d Cir. 1979). See Circle J. Dairy,
Inc. v. A.O. Smith Harvestore Prod., Inc., 790 F.2d 694 (8th Cir. 1986) (soil and feed service owner,
though not veterinarian, could testify to physical condition of herd; he had experience with feed-
related health problems in dairy cattle); Fed. Crop Ins. Corp. v. Hester, 765 F.2d 723 (8th Cir.
1985)(farmers could state party's probable crop yield; they had experience growing corn on similar
land); Cunningham, supra n.17; Santana Marine Service v. McHale, 346 F.2d 147 (5th Cir. 1965)
(witness experienced in designing, making, and installing lift devices could testify to cause of ring
break); Moran v. Ford Motor Co., 476 F.2d 289, 291 (8th Cir. 1973) (court erroneously excluded
body and fender shop owner's testimony ball joint of car's suspension system was defective; witness
had experience in auto repair and had frequently examined wrecked cars); Tropea v. Shell Oil Co.,
307 F.2d 757 (2d Cir. 1962)(witnesses who had operated gasoline service stations could testify to
custom of disposing waste fluid pumped from fuel storage tanks); Western Spring Ser. Co. v.
Andrew, 229 F.2d 413 (10th Cir. 1956) (witnesses qualified in art of welding could testify that weld
was defective and caused tractor's drive shaft break); Davis v. Brown & Root Int'l, Inc., 1994 WL
34043 (E.D.La. 1994) (witness who was veteran boilermaker could testify to cause of corrosion in
pipe).

[13]Notes of Advisory Committee on 2000 amendments state:
In certain fields, experience is the predominant, if not sole, basis for a great deal of
reliable expert testimony. See, e.g., United States v. Jones, 107 F.3d 1147 (6th Cir.
1997) (no abuse of discretion in admitting the testimony of a handwriting examiner
who had years of practical experience and extensive training, and who explained his
methodology in detail); Tassin v. Sears Roebuck, 946 F.Supp. 1241, 1248 (M.D.La.

simply whether the witness' training and experience demonstrate a knowledge of the relevant subject matter. See Moran v. Ford Motor Co., 476 F.2d 289, 291 (8th Cir. 1973) (8th Cir. 1973) (relying on Hammond, 691 F.2d at 653). The witness' relative skill or knowledge goes to the weight, and not the admissibility, of the testimony. See Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).

Here, Mr. Catone is a railroad practices and safety expert, with approximately forty years of experience in the industry, who has "[a]bsolute and total familiarity with Federal Regulations, railroad operating and safety rules of all respective crafts and departments...[as well as] with all phases of railroad accident investigations..." See Exhibit "E." He is more than qualified to render an opinion on the applicability of an FRA Regulation.

Defendant's final argument underscores that a material issue of fact exists with respect to Defendant's liability under the LIA. Defendant asserts that its Defendant's General Manager of Locomotives disagrees with Mr. Catone as to the applicability of 49 CFR 229.119 and the custom and practice in the railroad industry. Defendant's Brief at 14. Defendant essentially asks the Court to make a credibility determination. However, the credibility of witnesses poses jury questions. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a Judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Ritchie v. Glidden Co., 242 F.3d 713, 722 (7th Cir.

_____

1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). See also Kumho Tire Co. v. Carmichael, [143 L. Ed. 2d 238,] 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

26

2001)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Regardless of whether Defendant's general manager of locomotives or Mr. Catone is correct, the issue should be decided by the jury.[14] Defendant has presented nothing to suggest otherwise.

6. Conclusion

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court DENY Defendant's Motion for Summary Judgment filed pursuant to F.R.C.P. 56(b).

BARISH◊ROSENTHAL

BY: *Paul J. Riley*
Paul J. Riley, Esquire
Attorney for Plaintiff

DATED: *8/30/05*

[14]Even assuming *arguendo* that the Defendant's General Manager of Locomotives is deemed correct as to the purpose behind 49 CFR 229.119, it matters not that the injury that occurred was not the type of injury the regulation sought to prevent. Kernan v. American Dredging Co., 355 U.S. 426, 432-35, 2 L. Ed. 2d 382, 78 S. Ct. 394 (1958) ("In FELA cases based upon violations of the Safety Appliance Acts or the Boiler Inspection Act [recodified as the LIA], the Court has held that a violation of either statute creates liability under FELA if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent.")

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Plaintiff's

Response to Defendant's Motion For Summary Judgment was served on the following by first class

mail, postage prepaid this $\mathcal{3c}^{th}$ day of August, 2005:

John J. O'Brien, Esquire
O'Brien & von Rosenvinge
27 Mica Lane, Suite 202
Wellesley, MA 02481

BARISH&ROSENTHAL

BY:

Paul J. Riley, Esquire